Matter of Booker v Venettozzi (2020 NY Slip Op 00461)





Matter of Booker v Venettozzi


2020 NY Slip Op 00461


Decided on January 23, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 23, 2020

528555

[*1]In the Matter of Lance Booker, Petitioner,
v
Donald Venettozzi, as Acting Director of Special Housing and Inmate Disciplinary Programs, Respondent.

Calendar Date: January 3, 2020

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Pritzker, JJ.


Lance Booker, Auburn, petitioner pro se.
Letitia James, Attorney General, Albany (Marcus J. Mastracco of counsel), for respondent.



Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Commissioner of Corrections and Community Supervision finding petitioner guilty of violating a prison disciplinary rule.
After petitioner's urine twice tested positive for the presence of opioids and THC, petitioner was charged in a misbehavior report with using a controlled substance. Following a tier III disciplinary hearing, petitioner was found guilty of the charge, and a penalty was imposed. Petitioner's administrative appeal was unsuccessful, prompting him to commence this CPLR article 78 proceeding to challenge the determination of guilt.
To the extent that petitioner argues this point, we find that the misbehavior report, hearing testimony and testing documentation constitute substantial evidence to support the finding of guilt (see Matter of Harrison v Venettozzi, 177 AD3d 1071, 1071 [2019]; Matter of Rahman v Annucci, 172 AD3d 1810, 1810 [2019]). As for petitioner's chain of custody argument, the record reflects that petitioner's urine sample was obtained at approximately 9:50 a.m. on January 23, 2018 and placed in a secure freezer at approximately 12:15 p.m. that same day, where it remained until it was tested on January 30, 2018. The correction officer who obtained the sample testified that, during the approximately 2½ hours that elapsed between the time that the sample was obtained and frozen, the sample was secured in a locked office to which he was the only correction officer who had a key. Nothing in the record suggests that the failure to immediately refrigerate and/or freeze petitioner's urine sample resulted in a false positive (see Matter of Hyzer v Fischer, 104 AD3d 983, 983 [2013]; Matter of Peterson v Goord, 268 AD2d 739, 739 [2000]), and, in view of the correction officer's testimony and the corresponding entries on the chain of custody form, the record supports the Hearing Officer's conclusion that petitioner's sample was "maintained in a secure location at all times" (Matter of Odome v Goord, 8 AD3d 921, 922 [2004]; see Matter of Ellison v Goord, 274 AD2d 800, 801 [2000]; Matter of Peterson v Goord, 268 AD2d at 739; see also Matter of Cobb v Yelich, 118 AD3d 1235, 1236 [2014]; Matter of Polite v Goord, 22 AD3d 1000, 1001 [2005]). Petitioner's remaining claims have been examined and found to be lacking in merit. Accordingly, the underlying determination is confirmed.
Egan Jr., J.P., Lynch, Clark, Mulvey and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.